# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 21, 2002 Session

## STATE OF TENNESSEE v. STEVEN D. FISH

**Direct Appeal from the Circuit Court for Blount County**
**No. C-11246     D. Kelly Thomas, Jr., Judge**

_____

**No. E2001-02200-CCA-R3-CD**
**October 8, 2002**
_____

As a result of his guilty plea to one count of attempted rape of a child, the appellant, Steven D. Fish, was sentenced to eight years incarceration in the Tennessee Department of Correction, with thirty days to be served in confinement and the balance served on supervised probation. After the appellant began serving his probationary sentence, a probation violation warrant was issued. Subsequent to a probation revocation hearing, the trial court found that the appellant had violated the terms of his probation and ordered the appellant to serve the remainder of his sentence in confinement. On appeal, the appellant alleges that the trial court erred in revoking his probation. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Eugene B. Dixon (on appeal) and Jerry G. Cunningham (at trial), Maryville, Tennessee, for the appellant, Steven D. Fish.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Mike Flynn, District Attorney General; and Kirk Andrews and Edward P. Bailey, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On August 31, 1998, the Blount County Grand Jury indicted the appellant for the aggravated sexual battery of a victim under thirteen years of age. Tenn. Code Ann. § 39-13-504(a)(4) (1997). Subsequently, the appellant entered an Alford plea of guilty to attempted rape of

a child.[1]  Tenn. Code Ann. §§ 39-12-101, -13-522 (1997).  The plea agreement stipulated that the appellant would receive an eight year sentence, thirty days of which would be served in confinement with the balance served on supervised probation.[2]

On June 1, 2001, the appellant's probation officer, Carolyn Brewer, reported to the court that the appellant had failed to comply the conditions of his probation because he violated

> Rule #1 in that he has admittedly driven a motor vehicle while under the influence of alcohol[;] Rule #5 in that he left the State of Tennessee without the permission of his probation officer[;] #7 in that he admittedly has used al[co]holic beverages while on probation[; and] Rule #9 in that he has not followed the sex offender directives.

Based upon this information, the trial court issued a probation violation warrant.

The trial court held a probation violation hearing on August 13, 2001.  William Tillery, a licensed clinical social worker supervising the appellant's sex offender treatment, was the first witness.  Tillery asserted that, based upon his education and training, he would classify the appellant as a pedophile.  Thus, the appellant was in need of treatment.  Tillery explained that sex offender treatment is

> supervision and monitoring and treatment all combined into one package.  A part of treatment is polygraph exams, part of treatment is regular group treatment, psychotherapy, learning different skills on how to prevent further sexual problems.

He further asserted that sex offender treatment is "a lifelong process.  It's not a short-term treatment process."  Tillery stated that it had recently become necessary to include the appellant's wife, Michelle Fish, in the appellant's treatment.  Tillery opined that the appellant was doing well "on the intellectual side" of treatment, but noted three areas in which the appellant was not progressing.  Specifically, Tillery maintained that the appellant "continued to drink alcohol, he continued to watch X-rated movies with his wife, even though he had been warned, and he continued to masturbate to fantasies regarding his [sixteen-year-old] sister-in-law."  Tillery explained that each of these violations could affect the appellant's control and cause a relapse.

Tillery also related an incident that the appellant reported involving the appellant's three-year-old son.  According to the appellant, when his son gave the appellant a surprise kiss on the back of the neck, the appellant "got a half erection."  Tillery related that, following the appellant's confession, the appellant "was polygraphed."  Tillery also maintained that the appellant's

---

[1] An Alford plea, otherwise known as a best interest guilty plea, may be entered when "[a]n individual accused of a crime . . . voluntarily, knowingly, and understandingly consent[s] to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970); see also Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).

[2] At the probation revocation hearing, the appellant conceded that he pled guilty to the underlying offense because he touched the breast of a five-year-old child and placed his fingers inside her vagina.

-2-

admission of the incident was a positive factor because the appellant was asking for help instead of acting out the incident.

Regarding the problem areas in the appellant's treatment, Tillery indicated that, even though the appellant knew that he was not supposed to drink alcoholic beverages, the appellant continued to consume alcohol. Furthermore, a psychological test revealed that the appellant possessed a "high probability for a substance abuse problem." As a result, the appellant's probation officer mandated the appellant's attendance at Alcoholics Anonymous (A.A.) meetings.

Tillery also testified that the X-rated videos were purchased prior to the appellant's marriage and the video tapes had been surrendered to Tillery. Tillery testified that, according to a polygraph taken by the appellant on April 24, 2001, the appellant was truthful when he related that he had not had recent sexual contact with anyone under the age of eighteen. Moreover, on cross-examination, Tillery responded that the appellant "did fine" on the last polygraph and Tillery recommended that, as part of the appellant's treatment, he be tested every three months rather than every six months. Nevertheless, as a precaution, Michelle Fish signed a supervisor's agreement pledging to monitor the appellant's behavior, particularly around their son. In sum, based upon the information at his disposal, Tillery concluded that the appellant could be managed in the community while on supervised probation. However, Tillery indicated that "I have made it, I think, perfectly clear to Mr. Fish and to Ms. Brewer that with any violation of any one of the eight recommendations that I've made, then he needs to just consider going to jail."[3] As an aside, Tillery advised the court that the appellant had not undergone a psychosexual evaluation prior to his original sentencing to determine the appellant's risk to reoffend and Tillery recommended that the court authorize such testing. Furthermore, in assessing the appellant Tillery noted that the appellant was a hard worker who supported his family and was liked by his employer.

Carolyn Brewer, the appellant's probation officer, testified that the appellant paid his fees and court costs, kept her informed, and notified her of changes in residence and employment. Additionally, he passed his drug tests and completed the Tennessee Bureau of Investigation (TBI) reports. However, Brewer testified that the appellant had left the state without permission. Brewer stated that "[w]hen I called asking about it, he did admit that he had gone [out of state without permission]." She maintained that the appellant attended and participated in sex offender

---

[3] Tillery made the following recommendations to be implemented if the appellant remained on probation:
1.  NO contact with his son without his wife's visual supervision.
2.  NO contact with his sister-in-law under any circumstances.
3.  NO contact with anyone under the age of 18 without proper supervision.
4.  NO alcohol and he be mandated to go to AA one time per week.
5.  NO viewing of X-rated movies or other pornographic material.
6.  He should be mandated to include his wife in his treatment with me or with another certified sex offender treatment person.
7.  He should be mandated to pass a polygraph every three months over the next year.
8.  He should be mandated to obtain a full and complete psychosexual presentence evaluation as recommended by the Tennessee State [S]ex Offender Board.

counseling, although he missed approximately three meetings. Brewer further testified that the appellant had admitted that, since being placed on probation, he had used alcohol and had driven a vehicle while under the influence. She also informed the court that the appellant had owned and watched X-rated videos and had contact with minors, particularly his sister-in-law. The appellant also confessed to "accidentally brushing up against" two minor females. Additionally, Brewer related that the appellant's use of alcohol seemed to be increasing; however, the appellant claimed he was attending A.A. meetings. Nonetheless, Brewer related that the probation committee recommended that the appellant remain on probation with the implementation of "tighten-up criteria," such as the regulations suggested by Tillery.

Based upon this evidence, the trial court revoked the appellant's probation. However, the court agreed to hold another probation hearing after the appellant submitted to the psychosexual evaluation he should have undergone prior to his original sentencing. At the subsequent hearing on September 6, 2001, Brewer basically repeated her testimony from the prior hearing. Additionally, she noted that the appellant "has not at any time thought he had a problem with alcohol," explaining that the appellant "has minimized it." Moreover, Brewer acknowledged that she had recently learned that, because of the appellant's drinking, the appellant and his wife had separated for three months during his probationary period. However, the appellant failed to disclose this information to Brewer. Accordingly, Brewer concluded that the appellant had not been honest about changes in his family life.

The appellant's mother, Arlene Fish, testified that the appellant had a good relationship with his son. She also maintained that she would assist the appellant's wife in supervising the appellant's behavior. Arlene Fish conceded that she had been unaware of the appellant's alcohol problem.

The appellant testified on his own behalf. He related that, at the time of the hearing, his wife was pregnant with their second child. He stated that he had attended three A.A. meetings since the previous probation revocation hearing. He asked the court to forgive his "oversight" in continuing to drink while on probation. He averred that he "used" alcohol but did not "abuse" it; however, he admitted that becoming intoxicated would constitute an abuse of alcohol. He also conceded that he had been intoxicated while on probation. The appellant opined that the A.A. meetings had been helpful, but, "[a]t this point," he was unsure if he was an alcoholic.

The appellant also confessed that he continued to have masturbatory fantasies about his sixteen-year-old sister-in-law. Furthermore, regarding the first incident of "accidentally brushing up against" a minor female, the appellant related that he was bent over tying his shoe when his sister-in-law asked him to smell the perfume she received for Christmas. He explained that, when he raised his head, his face "smacked right into her breast." The second incident occurred when a minor female neighbor commented that she was fat. Thereupon, the appellant "went to smack her belly telling her that she's not fat. And the top part of my hand hit the bottom part of her breast when I went to smack her belly."

-4-

Additionally, upon questioning, the appellant attempted to explain the incident involving his son. He stated that he and his wife were lying in the floor watching television when his son kissed the appellant on the back of the neck. The appellant turned around, thinking that his wife had kissed him. The appellant stated that, when he discovered that the kiss came from his son,

> I was very nervous, I was very scared that he had kissed me and it was not her and that it gave me a tingly sensation because I thought it was her. I got up and I got so nervous that I completely lost control of any bodily functions or whatever you want to–however you want to say that, and I did get a half erection, but it was not a sexual–it was not in a sexual way, it was more of a response or something along that nature.

He further asserted that he was not aroused by his son on that occasion or at any time. Nonetheless, the appellant acknowledged that he is a pedophile and that he found the diagnosis "embarrassing." The appellant conceded that he and his wife had separated for three months because of his drinking. He contended that he was unaware that he was required to inform Brewer of the separation "[b]ecause I thought I was on probation for sexual battery, not divorce."

The appellant maintained that he was a good worker who was appreciated by his employer and that he had a good relationship with his family. He indicated that the psychosexual evaluation revealed that he had a "low to moderate" chance of reoffending. Regardless, he conceded that, if he were guaranteed that he would not get caught, he might trick or force someone to have sex with him. The psychosexual evaluation confirmed this hypothesis. The appellant also acknowledged that he was prohibited from watching X-rated videos and admitted that his masturbatory fantasies regarding his sister-in-law could lead to a relapse.

Finally, the appellant's wife, Michelle Fish, testified. Michelle related that the appellant worked to support the family, but she also had a part-time job as a manager at a Food Lion grocery store. However, she maintained that she could not economically survive without the appellant's income. Michelle confirmed that she and the appellant had a three-year-old son and that their second child was due in five weeks.

Michelle testified that she had not noticed any of the warning signs for reoffending in the appellant's recent behavior. However, she also acknowledged that she had witnessed no behavior prior to the underlying offense which would have indicated the appellant's pedophilia. Michelle acknowledged that she and her husband owned the X-rated videos prior to their marriage. After the appellant revealed that he was prohibited from watching X-rated videos, Michelle relinquished the videos to Tillery. Moreover, she confessed that she and the appellant separated because of the appellant's drinking. However, she was unaware until later that the use of alcohol constituted a violation of the appellant's probation. Nevertheless, she related that she currently does not allow alcohol in her home. Furthermore, Michelle conceded that the appellant did not reveal to her the facts concerning the underlying offense until after he was arrested. In sum, Michelle conceded that the appellant had not been very honest with her about the offense or about his probation.

At the conclusion of the proof, the trial court found no reason to reinstate the appellant's probation. The court noted that despite two years of treatment, the appellant continued to consume alcohol, watch X-rated videos, and fantasize about minors even though he knew such behavior violated his probation. The trial court also noted its concern with the results of the psychosexual evaluation, particularly the conclusion that the appellant would force or trick someone to have sex with him if assured that he would not be caught. Accordingly, it was the court's "honest conclusion that you have not responded well enough to this treatment program to risk your being out in society." The trial court also noted that "[i]f I had had this report before the sentencing, I don't know that I would have agreed to 30 days in jail and the balance on probation. . . . [I]f I had seen these kinds of things in the report, I doubt very seriously if I would have approved the agreement."

## II. Analysis

On appeal, the appellant argues that "the trial court abused its discretion in revoking appellant's grant of probation," and "the trial court abused its discretion in revoking appellant's grant of probation based on the admissions of the appellant which were disclosed by polygraph." Initially, we note that, upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(d) (1997); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Such probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred." State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995).

The appellant argues that the allegations constituted only "technical" violations of his probation. However, at the hearings and on appeal, the appellant conceded that he "truthfully admitted to his probation counselor, Carolyn Brewer and to Mr. Tillery that while on probation he had consumed alcohol, watched an x-rated video with his wife and had masturbated to a fantasy regarding his sister-in-law." The appellant contends that these disclosures to Tillery indicate progress in his treatment, and are not sufficient evidence to revoke his probation. Specifically, the appellant complains that "[i]t thus appears that by following the rules of his probation which required him to report incidents of sexual arousal and by testifying thereto, [the appellant] was unknowing[ly] giving testimony against himself." The appellant also alleges that "[a]ll of the 'technical' violations which were used to revoke Appellant's probation were initially disclosed by means of court mandated polygraph examinations, without which there would have been no grounds for revocation."

We must disagree with the appellant's assessment. The trial court specifically found that the appellant violated probation "by driving under the influence, leaving the State without permission, using alcoholic beverages while on probation, and also continuing to do things that you were told not to do by the Sex Offender Treatment director." The trial court determined that this "steady course" of probation violations indicated a risk to the community. Notably, the trial court stated that "I can't think of a course of conduct that a sex offender could follow for a year and a half that would be any worse, other than going out and actually committing crimes." The trial court

clearly based its decision to revoke the appellant's probation upon the appellant's confessed violations, namely his leaving the state without permission, using alcohol, watching X-rated videos, and utilizing masturbatory fantasies featuring a minor. Therefore, because there is sufficient evidence to support the trial court's decision, we conclude that the trial court did not abuse its discretion in revoking the appellant's probation.

Finally, the appellant argues that the trial court improperly revoked the appellant's probation based on admission which were initially disclosed by a polygraph. Contrary to the appellant's assertions, the record does not reflect that the results of the polygraph were admitted into evidence. Additionally, the record does not indicate that all of the information considered by the trial court in revoking his probation was revealed pursuant to a polygraph examination. The appellant's wife testified to the appellant's consuming alcohol and viewing X-rated movies. Additionally, the appellant confessed his violations to Tillery, Brewer, and the court. As this court has previously stated, "[a]lthough the result reached in this case might appear to punish the [appellant] for bringing his urges to reoffend to his probation officer's attention, we believe that the [appellant's] interests and society's interests have been served." State v. Kevin Yant, No. 01C01-9206-CR-00187, 1993 Tenn. Crim. App. LEXIS 422, at *9 (Nashville, Jul. 8, 1993). Again, we conclude the trial court did not abuse its discretion by revoking the appellant's probation. This issue is without merit.

### III. Conclusion
Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-7-